Filed 7/6/23  The Palm Grove v. Pirozzi CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PALM GROVE, LLC, et al., Plaintiffs and Respondents, v. ADAM PIROZZI et al., Defendants and Appellants. | 2d Civil No. B320449 (Super. Ct. No. 20CV02870) (Santa Barbara County) |

Appellant Adam Pirozzi and respondent Dennis Hoey were business partners in a Santa Barbara golf course venture.[1]  A dispute arose and Pirozzi agreed to buy Hoey's interest in the business.  Hoey sued when Pirozzi failed to complete the

---

[1] Appellants are Pirozzi and three co-defendants: Quicklink Asset Services, LLC, Five Deep Entertainment, Inc., and Hidden Oaks Ranch, LLC.  A fourth co-defendant, Central Holding Group LLC, is not a party to this appeal.  Respondents are Hoey and two co-plaintiffs:  The Palm Grove, LLC and Vantage Group Investments, LLC.

purchase. The trial court found Pirozzi in breach of the buyout agreement and ordered the golf course sold on the open market. We affirmed the judgment in a prior appeal.[2]

Pirozzi now challenges a post-judgment order distributing the proceeds from the golf course sale and awarding Hoey additional attorney's fees. We again affirm.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Pirozzi and Hoey formed a partnership to acquire Hidden Oaks Golf Course (Hidden Oaks) in 2015. Hoey took title to the property and Pirozzi received a 25-year lease to operate the golf course and clubhouse. Their relationship soured when Pirozzi fell behind on lease payments. Hoey filed two actions in 2019: one to dissolve the partnership and the other to evict Pirozzi.[4] They reached a compromise before trial and signed a multi-part settlement agreement (settlement).[5] The settlement gave Pirozzi 60 days to buy Hidden Oaks from Hoey for $4.4 million. It stipulated they would sell Hidden Oaks on the open market if

---

[2] *Palm Grove, LLC, v. Pirozzi* (Sept. 27, 2022, B313186) [nonpub. opn.] (*Palm Grove I*).

[3] The underlying facts are set forth in *Palm Grove I.* We summarize them here.

[4] Santa Barbara Superior Court case nos. 19CV03509 (action to dissolve partnership, etc.) and 19CV03511 (unlawful detainer).

[5] Their "Settlement Agreement and Release of All Claims" included two exhibits: (1) a "Memorandum of Understanding"; and (2) a "Residential Income Property Purchase Agreement and Joint Escrow Instructions" with attachments and addenda. All were signed on August 13, 2020.

Pirozzi was "unable" or "unwilling" to close the transaction. Hoey would receive the first $4.4 million from the sale and split any excess proceeds with Pirozzi.

Hoey filed this action for declaratory relief when the buyout failed to close. The trial court conducted a four-day bench trial. It found Pirozzi "ha[d] the expertise to make the settlement agreement work if he wanted to do it; but his demeanor and his testimony conclusively convinced the Court that he elected not to do it."[6] It entered judgment on June 15, 2021 (judgment) dissolving the partnership, terminating Pirozzi's lease, and authorizing Hoey to sell Hidden Oaks on the open market. The judgment entitled Hoey to receive the first $4,723,859 from the sale and awarded him attorney fees of $94,600. The court reserved jurisdiction to modify these figures when escrow closed. We affirmed the judgment in *Palm Grove I*.

Kingdom Hospitality Group, LLC (Kingdom) agreed to buy Hidden Oaks for $7 million. As the closing date neared, Hoey moved ex parte for an order finalizing distribution of the sale proceeds. Pirozzi objected to the post-judgment attorney's fees sought by Hoey and requested the court exclude certain personal items at Hidden Oaks from the sale. The trial court overruled the objections and issued an "Order Granting Plaintiffs' Request to Finalize Distribution of Sale Proceeds Pursuant to Judgment" on April 5, 2022 (distribution order).

---

[6] The trial court further observed, "[Pirozzi's] testimony in opposition to [Hoey's] evidence and his defense to the relief sought by [Hoey] was neither reconcilable nor credible. Based upon his testimony and actions in the past, it is reasonable to assume he will frustrate any effort to sell the property to a third-party."

Pirozzi again appealed. He challenges the following: the distribution order's award of additional attorney's fees to Hoey; the decision to deny Pirozzi's request to exclude personal items from the sale to Kingdom; and the trial court's failure to value Hidden Oaks' ongoing business operations separately from its real property and personal property assets.

DISCUSSION

*A. Post-Judgment Attorney's Fees*

Hoey sought post-judgment attorney's fees in his ex parte request for an order approving distribution of sale proceeds. Pirozzi argues the court erred because it awarded those fees without a fully noticed motion. (Cal. Rules of Court, rule 3.1702.) He also challenges the award as insufficiently documented by Hoey. We reject both arguments.

The timing requirements for fee motions are "not intended to govern the time for bringing motions for fees arising from post-final-judgment activities." (See *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 265.) The appropriate inquiry is whether deciding Hoey's request on shortened notice unfairly prejudiced Pirozzi. (*Id.*, at pp. 271-272.) It did not. The judgment authorized the trial court to modify the fees award "at the time of close of escrow of the third-party sale." Hoey notified Pirozzi of the March 30 ex parte hearing on March 25 and served his papers on March 29. Counsel for both parties appeared on March 30. The court continued the hearing for a week and gave Pirozzi three days to respond more fully. Pirozzi then filed a 15-page supplemental opposition along with revised objections, three declarations, and exhibits. The court stated to Pirozzi's counsel at the April 5 hearing that it had "read everything that you have to say" and heard oral argument from both sides.

4

Hoey was "entitled to the reasonable and necessary costs" of enforcing his judgment. (Code Civ. Proc., § 685.040.) This included attorney's fees, which the judgment awarded pursuant to the settlement's provisions. (*Id.*, citing § 1033.5, subd. (a)(10)(A).) These additional fees are supported by substantial evidence. Hoey's counsel filed declarations describing the nature of their work, the number of hours incurred, and their hourly rates. The trial court found these figures reasonable considering Pirozzi's "extremely hard-fought and aggressive defense to delay and, at certain times, outright avoid compliance with the Judgment." Our review of the record gives us no reason to question this finding.

*B. Personal Items Sold During the Third-Party Sale*

Pirozzi contends the trial court violated his due process rights when it denied his request to exclude certain personal items from the sale to Kingdom. These items included what he described as family heirlooms, furnishings, and other property bought with personal funds. He argues "[n]either the judgment nor litigation in this case involved claims on *personal* property" and that the settlement, particularly the memorandum of understanding, "made no mention of personal property." We conclude the trial court properly considered and denied Pirozzi's request.

As a threshold matter, it strains credibility to argue this action does not encompass disputes over personal property stored at Hidden Oaks. The settlement states: "[t]he Parties have, rather than engaging in protracted litigation, negotiated a full, complete and final settlement of the Partnership Dispute . . . pursuant to the terms of this Settlement Agreement and the Memorandum of Understanding." In turn, the memorandum of

5

understanding states at paragraph 13 that Pirozzi would receive "[a]ny asset, improvement, research, or *personal property* acquired as part of the partnership investment of business operations" pursuant to his buyout of Hoey's interest in Hidden Oaks. (Italics added.) Further, an addendum to their purchase agreement stated both Pirozzi and Hoey had "personal property, equipment, fixtures, etc." at Hidden Oaks and would retain ownership of their items after the buyout. Hoey expressly incorporated these settlement documents into his first amended complaint by reference and attached them as Exhibit "1." He requested, among other remedies, a judgment: "determining that Defendants are in breach of the Settlement Agreement and MOU"; and "dissolving the Partnership and terminating the Master Lease and *terminating any and all business opportunities of all Parties created as a result of the original purchase, Partnership Agreement, and Master Lease*." (Italics added.) Finally, the judgment ordered that "[i]n order to continue the business operations on the parcels, the Court orders that nothing will be removed, altered or tampered with."

Granting Hoey's motion on shortened notice did not deprive Pirozzi of due process. Pirozzi knew long ago that personal property issues might arise at closing. The trial court's statement of decision and judgment ordered nothing "be removed, altered, or tampered with" pending a third-party sale so Hidden Oaks could continue operating. Pirozzi knew Hoey was actively marketing the property and might sell at any time. We agree the request to exclude any personal property was made, in the court's words, "vastly too late."

Lastly, the abbreviated hearing schedule gave Pirozzi occasion to voice his concerns fully. Hoey's moving papers stated

6

that Kingdom paid $150,000 above the asking price for "certain personal property items associated with The Parcels," including golf course maintenance equipment, household furnishings, and electronics. He proposed splitting these proceeds with Pirozzi because the items were "purchased with assets flowing from the former 50%/50% partnership." Pirozzi disagreed and presented evidence that he bought certain items with personal funds and never intended to sell them. In reply, Hoey submitted evidence that Pirozzi's representatives had already retrieved those personal items he wanted to keep, and that all items remaining were treated as "business inventory" to increase Hidden Oaks' sale value. The trial court resolved these factual disputes in Hoey's favor. Its findings are supported by substantial evidence.

## C. Business Opportunities

Pirozzi contends the distribution order "failed to address the sale of the business that was being operated by the parties." He argues the court should have appointed appraisers to value the ongoing business as part of the post-judgment dissolution of the partnership. (Corp. Code, § 15908.02.) The contention is forfeited because Pirozzi did not raise it in the trial court. (*Regency Midland Construction, Inc. v. Legendary Structures Inc.* (2019) 41 Cal.App.5th 994, 999.) Even if not forfeited, the argument fails. Pirozzi cannot use the distribution order as a Trojan Horse in which he can push a belated appeal of the judgment. Whether Hidden Oaks' ongoing business operations should have been valued or marketed separately from its physical assets is an issue Pirozzi should have raised during the statement of decision process after trial or in his direct appeal.

The argument fails on the merits as well. The judgment is not a piecemeal disposition of the Hidden Oaks business venture.

7

Hoey's first amended complaint sought a judgment "*terminating any and all business opportunities of all Parties created as a result of the original purchase, Partnership Agreement, and Master Lease.*" (Italics added.) The trial court found Hoey proved "the allegations in the FAC are true" and that he was "entitled to a judgment for declaratory relief." Echoing the first amended complaint, the resulting judgment terminated "[a]ny and all business opportunities possessed by [Pirozzi] and created as a result of the original purchase [price], Partnership Agreement, and [the] Master Lease." It placed Hoey "in charge of the continued business operations of the Parcels up through and including a successful third-party sale" and ordered his operating expenses reimbursed out of Hidden Oaks' revenues. The judgment's terms are clear: Pirozzi's right to conduct ongoing business operations terminated upon entry of judgment; and Hoey's right to conduct business operations terminated upon its sale to a third party. The distribution order did not address the sale of the "business" separately because the judgment did not recognize it as a separate asset in the first place. We will not infer its existence from the distribution order's silence.

Pirozzi requests judicial notice of a deed of trust recorded after the sale to Kingdom granting a $12 million security interest to an entity named NPI Debt Fund I, LP (NPI). Pirozzi offers the deed as evidence Hoey received $5 million outside of escrow to purchase the business above the listed sale price of $7 million. We are not persuaded. The deed shows, if anything, that Kingdom borrowed $12 million from NPI. It states nothing about Hoey. We will not speculate why NPI's security interest exceeds the listed sale price nor assume Hoey received the excess $5 million in an illicit side deal. Such facts would not be established

8

even if shown by the deed, which they are not.  (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on another other ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257 ["'[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced therefrom'"].)  The request for judicial notice is denied.

## CONCLUSION

The trial court's distribution order fell within its retained authority to enforce the judgment.  Judgment is affirmed.  Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Thomas P. Anderle, Judge
Superior Court County of Santa Barbara
_____

Kirker Wright Law Group, Vanessa Kirker Wright; Berg Law Group, Eric Berg, for Plaintiffs and Respondents, The Palm Grove, LLC, Dennis Hoey, and Vantage Group Investments, LLC.

Ozbirn Law, Jasper Ozbirn, for Defendants and Appellants Adam Pirozzi, Quicklink Asset Services, Five Deep Entertainment, and Hidden Oaks Ranch, LLC.